68886. LONG v. A. L. WILLIAMS & ASSOCIATES, INC. et al.
(323 SE2d 868)

POPE, Judge.
Appellant Barry F. Long brought this action, as amended, against appellees A. L. Williams & Associates, Inc. (Williams) and National Home Life Assurance Company (NHL). In Count I appellant sought actual damages plus penalty and attorney fees against NHL on the ground that NHL had failed to pay certain medical expenses to which appellant contends he was entitled pursuant to an alleged agreement providing group medical insurance coverage. In Count III appellant sought recovery of his medical expenses from Williams on the ground that Williams breached a condition of his contract of "employment" by preventing him from qualifying for the subject group medical insurance coverage. Count II asserts a conspiracy between NHL and Williams to deny appellant insurance coverage by establishing eligibility requirements therefor which were impossible to meet. This appeal arises from the trial court's grant of appellees' motion for summary judgment and to dismiss.

The following facts of record are essentially without dispute. Williams is a life insurance general agency which provides, through an organization of independent insurance agents, a sales force for the marketing of life insurance products. Since early 1978 NHL has been one of the insurance companies for which Williams provides a marketing force. Appellant began working for Williams on a part-time basis in July 1977, becoming full time in September 1978. Appellant concedes that he was not an employee of Williams and had no such

contractual relationship with Williams. Rather, he was an independent contractor or agent. Appellant became fully authorized to solicit business on behalf of NHL in May 1978. NHL provided medical insurance coverage to those agents of Williams who were licensed to sell NHL policies through a group policy wherein each agent became eligible for benefits under the policy by one of two methods: "a. 'Fast Start' Enrollment Method: An individual agent may qualify for participation by the 'Fast Start' enrollment method by producing during the 90-day period immediately following his license notification, a minimum of $5,000 of 'submitted' annualized premium and submitting at least 5 non-family cases. b. 'Standard' Enrollment Method: An individual agent may qualify for participation by the 'Standard' enrollment method by producing a minimum of $5,000 of 'paid' annualized premium during the 12-month period immediately following his contract date." Whether appellant qualified under the second of these options is not a question at issue in this lawsuit.

Appellant contends that, upon instructions from Williams, he was not allowed to solicit business on behalf of NHL until September 1978. He avers that if he had been allowed to write the business, he would have met the "Fast Start" requirements and been fully covered under the group insurance plan. In January 1979 appellant incurred certain medical expenses. His claim filed with NHL for coverage under the group insurance plan was denied on the ground that he had failed to comply with the requirements for coverage under the "Fast Start" method. This suit was filed on November 23, 1981.

1. In support of its motion for summary judgment, NHL submitted the affidavit of one of its employees who worked in NHL's Contracts and Licensing Departments during 1978. She averred: "During the summer of 1978, I had several conversations with Art Williams of A. L. Williams & Associates, Inc., and was privy to several conversations both with Art Williams and with agents of A. L. Williams & Associates, Inc. One of my jobs at that time was to help agents become licensed and authorized to sell insurance for National Home Life Assurance Company. During that time I neither instructed Art Williams nor any agent of A. L. Williams & Associates, Inc. to delay writing insurance for National Home Life once they were licensed and had signed an agreement with National Home Life Assurance Company authorizing them to write policies. I understand that Mr. Williams may have been somewhat reluctant to have his agents writing policies on our company until he had tested our computer program. When I learned of this in July, 1978, we were set up to handle his business. It was our Department policy to urge A. L. Williams & Associates, Inc. to have all its agents sell our policies without delay and to my knowledge, representatives of National Home Life Assurance Company did so. We did not instruct A. L. Williams & Associates,

Inc. to hold back authorization for any agents, nor did we request that it do so. All our efforts were directed towards getting more of their business." There is no evidence of record on appeal which contradicts the foregoing affidavit.[1] Thus, the evidence of record conclusively shows that appellant failed to qualify for medical insurance coverage by the "Fast Start" method and also that NHL did not conspire with Williams to deprive appellant of such coverage. Under these circumstances, NHL is entitled to a judgment in its favor as a matter of law as to all of appellant's claims against it, and the trial court properly so held. See OCGA § 9-11-56 (c).

2. On the basis of the foregoing discussion, it is clear that summary judgment was also properly entered in favor of Williams as to appellant's conspiracy claim.

3. Whether Count III of appellant's complaint is an action for breach of an oral contract or an action for tortious interference with a contract, the cause of action must have been brought within four years of its accrual or be barred by the applicable statute of limitation. See OCGA §§ 9-3-25 and 9-3-31 respectively. Appellant concedes that Williams permitted him to solicit business for NHL in September 1978, so the breach alleged in Count III necessarily occurred prior to that time. See generally *Waddey v. Davis*, 149 Ga. App. 308 (1) (254 SE2d 465) (1979). It follows that this cause of action is barred by the statute of limitation if commenced subsequent to September 1982.

Although appellant filed his complaint on November 23, 1981, service was not perfected on Williams until January 10, 1983, more than thirteen months later. By affidavit, the registered agent for service of process for Williams testified that he has "always kept a registered address [of A. L. Williams & Associates, Inc.]" and that Williams "has always had its business located in DeKalb County, Georgia, and has always been listed in the telephone directory." Finally, he averred: "Other than the January 10, 1983 service of this action on [Williams], no previous service of the complaint, to my knowledge, has been attempted." The Senior Clerk of the Sheriff's Department of DeKalb County, by affidavit, stated that "she searched the Sheriff's docket books for 1981 and found no entry indicating a receipt by the Sheriff's office of a service copy in [this] action for service upon [Williams]; and that she searched the Sheriff's docket books for 1982 and found one entry indicating a receipt by the Sheriff's office of a service copy in [this] action for service upon [Williams]. Said service copy was received by the Sheriff's office on De-

---

[1] We note that appellant's amended notice of appeal specifically requested the clerk of the trial court to omit all depositions from the record on appeal.

cember 16, 1982. . . ." The docket in the trial court indicates no service or attempted service on Williams until January 10, 1983. The record is silent as to any explanation for the long delay between the filing of appellant's complaint and its service upon Williams.

"[A] civil action is commenced by the filing of a complaint, and under [OCGA § 9-11-4] provision is made for the issuance and service of process — the service to be made within five days from the time of receiving the summons and complaint, although failure to make it within the five days will not invalidate a later service.

"Then what effect does a belated service have, particularly where the delay is great, as here? It is laches, authorizing the court to dismiss the action where the statute of limitation had run before the service was so belatedly perfected. Although the late service is not 'invalidated,' it results in no pending suit between the parties until the date of the service and gives effect to the bar of the limitation." *Hilton v. Maddox, Bishop, Hayton Frame &c., Inc.*, 125 Ga. App. 423, 426 (188 SE2d 167) (1972). "[T]he trial court has discretion to determine the cause of delay and the diligence exercised by the plaintiff [here, appellant], who has the burden of showing lack of fault, and if it is attributable to the plaintiff this court will not intervene. [Cit.]" *Scoggins v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 408, 410 (274 SE2d 775) (1980). Following a hearing and after considering the pleadings, affidavits, answers to interrogatories, depositions and arguments of counsel, the trial court held that appellant's complaint against Williams (Count III) was barred by the statute of limitation. Compare *McCane v. Sowinski*, 143 Ga. App. 724 (240 SE2d 132) (1977). On the basis of the record in this case, we find no ground for reversal of the trial court's ruling. See *Brumit v. Mull*, 165 Ga. App. 663 (3) (302 SE2d 408) (1983); *Smith v. Griggs*, 164 Ga. App. 15 (2) (296 SE2d 87) (1982). Compare *Scoggins v. State Farm Mut. Auto. Ins. Co.*, supra.

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 9, 1984.

*Robert E. Richardson*, for appellant.
*Stanton J. Shapiro, Gregory J. Digel, Sharon R. Clutteur, Lewis B. Gardner*, for appellees.